UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **BYRON TAYLOR**, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 18-2666 (TSC) |
| **INTERNAL REVENUE SERVICE,** | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

Plaintiff Byron Taylor, proceeding *pro se*, brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, to obtain records maintained by the Defendant Internal Revenue Service ("IRS"). This matter is before the court on Defendant's Renewed Motion for Summary Judgment (ECF No. 36) and Plaintiff's two motions for clarification (ECF Nos. 42, 45) of the court's October 22, 2020, Memorandum Opinion and Order (ECF No. 33). For the reasons discussed below, the Court GRANTS summary judgment for Defendant and DENIES Plaintiff's motions.

I. BACKGROUND

At issue in this case are Plaintiff's four FOIA requests:

- February Request, dated February 6, 2017
- May Request, dated May 11, 2017 (Count I of the Complaint)
- March Request, dated March 15, 2018 (Count II of the Complaint)
- August Request, dated August 31, 2018 (Count III of the Complaint)

Although the Complaint does not mention the February Request, the court discusses it because Defendant's response to the February Request is relevant to its responses to the May, March and

Page **1** of **15**

August Requests. The court's October 22, 2020, Memorandum Opinion and Order resolved all matters raised in the March Request, and the *unresolved* items from the February, May and August Requests are identified below.

## A. February Request

Plaintiff introduced his February Request with a reference to a document (Letter LT11), dated January 18, 2017, which he received from the IRS. *See* Decl. of Satenik Konstantinidis (ECF No. 20-2, "Konstantinidis II Decl."), Ex. A (ECF No. 20-3) at 1 (page numbers designated by CM/ECF). Plaintiff sought:

> ii. A complete copy of each and every document that was determined to be subject to each $5,000.00 penalty listed in the above/attached document for a total of nine separate documents;
>
> iii. Provide copies of all returns made by IRS employees to replace the alleged nine frivolous returns listed in the above/attached document as required by 26 CFR 301.6020-a(b). Each of the nine documents should be verified by a written declaration that it is made under the penalties of perjury as required by 26 USC 6065;
>
> v. Provide any and all documents that identify me as a "person" defined by 26 USC § 6671 who is subject to the penalties listed in the above/attached listed document;
>
> vi. Provide a copy of Forms 8278 and 12775 for each of the nine penalties listed in the above/attached document.

*See* Def.'s Statement of Undisputed Material Facts (ECF No. 36-2, "Def. SMF") ¶ 1; Konstantinidis II Decl., Ex. A at 3. Senior Disclosure Specialist Satenik Konstantinidis, to whom the IRS assigned Plaintiff's FOIA requests, Konstantinidis II Decl. ¶¶ 1, 4, 19, construed this request as one "for records pertaining to penalties assessed against [Plaintiff] for tax years 2010, 2011, and 2012," *id.* ¶ 4.

Konstantinidis determined that the information described in item (iii) was the same information Plaintiff sought, and that the IRS already had released, on January 3, 2017, in

response to Plaintiff's three prior FOIA requests. *See id.* ¶ 14. Consequently, no search was conducted for records responsive to item (iii). *See id.*

Next, Konstantinidis conducted a search for records responsive to items (ii), (v) and (vi), beginning with a query of the Integrated Data Retrieval System ("IDRS"), *id.* ¶ 6, to retrieve taxpayer account information, *id.* ¶ 7; *see* Def. SMF ¶¶ 4-5, using Plaintiff's Social Security number along with certain Command Codes as search terms, Def. SMF ¶ 8. Konstantinidis "identified the status and location of the case file and IDRS Document Locator Numbers . . . associated with responsive records for all three tax years requested." Konstantinidis II Decl. ¶ 8; *see* Def. SMF ¶ 8.

Konstantinidis retrieved the records from the Fort Worth Federal Records Center and the Austin Service Center where the IRS had stored them. *See* Def. SMF ¶ 9. Among these records were documents responsive to items (ii) and (v) of the February Request. *See id.* ¶ 12. She also located Forms 8278 responsive to item (vi), but did not locate any Forms 12775. *See id.* On April 14, 2017, the IRS released in full 275 pages of records "represent[ing] the entire penalty assessment file[s] that existed for 2010, 2011, and 2012." *Id.* ¶ 16; *see generally* Konstantinidis II Decl., Ex. C (ECF No. 20-5). "The penalty assessment file[s] would contain all notes, records, memoranda, emails, and other documents related to the penalties assessed against Plaintiff." Def. SMF ¶ 16.

**B. May Request**

Apparently unsatisfied with the IRS's response to the February Request, Plaintiff submitted the May Request for information "related to numerous $5000 penalty assessments against [him] . . . for the tax periods 2010, 2011, and 2012." Compl. ¶ 6. Plaintiff sought:

>    i.   See the attached CP 15 letter dated June 15, 2015 for the tax period 2010. Provide a copy of all documents that were

      determined to be frivolous that resulted in the 'assessment' of the penalty listed therein. Specify specifically which documents this penalty applies to; and

ii. See the attached CP15 letter dated October 26, 2016 for the tax period 2010. Provide a copy of all documents that were determined to be frivolous that resulted in the 'assessment' of the penalty listed therein. Specify specifically which document this penalty applies to; and

iii. See the attached CP15 letter dated December 22, 2014 for the tax period 2011. Provide a copy of all documents that were determined to be frivolous that resulted in the 'assessment' of the penalty listed therein. Specify specifically which documents this penalty applies to; and

iv. See the attached CP 15 letter dated April 6, 2015 for the tax period 2011. Provide a copy of all documents that were determined to be frivolous that resulted in the 'assessment' of the penalty listed therein. Specify specifically which documents this penalty applies to**;** and

v. See the attached CP15 letter dated May 11, 2015 for the tax period 2011. Provide a copy of all documents that were determined to be frivolous that resulted in the 'assessment' of the penalty listed therein. Specify specifically which documents this penalty applies to; and

vi. See the attached CP15 letter dated December 22, 2014 for the tax period 2012. Provide a copy of all documents that were determined to be frivolous that resulted in the 'assessment' of the penalty listed therein. Specify specifically which documents this penalty applies to; and

vii. See the attached CP 15 letter dated April 20, 2015 for the tax period 2012. Provide a copy of all documents that were determined to be frivolous that resulted in the 'assessment' of the penalty listed therein. Specify specifically which documents this penalty applies to; and

viii. See the attached CP 15 letter dated December 7, 2015 for the tax period 2012. Provide a copy of all documents that were determined to be frivolous that resulted in the 'assessment' of the penalty listed therein. Specify specifically which documents this penalty applies to; and

ix. For each and every CP15 letter listed in paragraphs 1 through 8, provide a copy of the document signed under penalty of perjury as required by 26 USC 6065 stating the penalties listed

> > in each CP15 letter were properly determined and should be assessed.
>
> xi. Provide a copy of all documents required by CC Notice CC-2011-004 written by the supervisors approving the assessments listed in the attached CP 15 letters in paragraphs 1 through 8. Identify specifically which document provided applies to each assessment listed in the CP15 letters

*See* Konstantinidis II Decl. ¶¶ 18, 20; *see id.*, Ex. F (ECF No. 20-8) at 3-4; *see also* Compl. ¶ 5. Konstantinidis considered these items duplicates of items included in the February Request, *see* Konstantinidis II Decl. ¶¶ 18-19; Def. SMF ¶ 20, and therefore did not conduct a search for records responsive to these portions of the May Request, Konstantinidis II Decl. ¶ 19; Def. SMF ¶ 20. By letter dated June 9, 2017, the IRS notified Plaintiff that it already provided the information requested in items (i) through (ix) and (xi) in its prior release of "the entire penalty assessment files, to the extent they exist, for tax years 2010, 2011, and 2012." Def. SMF ¶ 26.

**C. August Request**

Plaintiff's August Request pertained to penalties assessed by the IRS for tax year 2015, *see* Compl. ¶ 18, and sought:

> b. A complete copy of each and every document that was determined to be subject to each $5000.00, penalty listed in the above/attached document;
>
> c. Copies of all returns made by IRS employees to replace the alleged frivolous returns listed in the above/attached document as required by 26 CFR 301.6020- l(b);
>
> f. A copy of Forms 8278 and 12775 for the penalty listed in the above/attached document;
>
> g. A copy of any and all documents identifying the position(s) shown on the returns listed in the above documents Identified as frivolous in IRS Notice 2010-33; and
>
> h. A copy of any and all documents in which he claimed for the tax period 2015 his income is not taxable because he assigns or attributes his income to a religious organization (a "corporation sole" or ministerial trust) claimed to be tax-exempt under

> section 501([c])(3), or similar arguments described as frivolous
> in Re[v.] Rul. 2004-27, 2004-1 C.B. 625.

Decl. of Satenik Konstantinidis (ECF No. 9-2, "Konstantinidis I Decl.") ¶ 4; *see id.*, Ex. A (ECF No. 9-3) at 2-3; Def. SMF ¶ 35; *see also* Compl. ¶ 17.

The IRS began its search for responsive records with a query of IDRS for taxpayer files, locating a tax file which was retrieved from storage at the IRS's Dayton, Ohio Service Center. *See* Def. SMF ¶¶ 40, 42. Released in their entirety were "27 pages of records pertaining to the Plaintiff's 2015 tax return and penalty assessment for Frivolous Tax Submissions." *Id*. ¶ 41; *see id*. ¶ 43. "The penalty assessment file would contain all notes, records, memoranda, emails, and other documents related to the penalties assessed against Plaintiff." *Id.* ¶ 45.

## II. DISCUSSION

### A. Plaintiff's Motions for Clarification

The court adopted Konstantinidis's alphabetical and numerical designations for the items listed in the February, May and August Requests. *See* Konstantinidis I Decl. ¶ 4 (listing items (a) through (h) of the August Request); Konstantinidis II Decl. ¶¶ 4 (listing items (i) through (vi) of the February Request), 18 (listing items (i) through (xi) of the May Request). "The numbering system Plaintiff used . . . did not include Roman numerals or letters," however. Pl. Opp. ¶ 5.[1]

Plaintiff appears to assume that the October 22, 2020, ruling ordered the IRS to release specific information, namely documents responsive to items (ii), (iii), (v), and (vi) of the February Request, items (i) through (ix) and (xi) of the May Request, and items (b), (c), (f), (g),

---

[1] Plaintiff's response to Defendant's renewed summary judgment motion includes a Memorandum in Support of Plaintiff's Response to Defendant's Renewed Motion for Summary Judgment and Plaintiff's Motion for Clarification of the Court's Previous Order (ECF No. 38-1 at 5-25) set forth in sequentially numbered paragraphs, plus exhibits A through F (ECF No. 38-2). For convenience, the court refers to the memorandum as "Pl. Opp." by the paragraph numbers Plaintiff has designated.

and (h) of the August request. *See* Pl. Opp. ¶ 4. He asks the court to amend its October 22, 2020, Memorandum Opinion and Order "to show the original designations of documents Plaintiff requested as they appear in his original FOIA request[s]," Pl. Second Mot. for Clarification (ECF No. 44) ¶ 6, so "that all parties understand exactly which documents are still being required by the Court for production by the IRS," Pl. Opp. ¶ 7.

The court DENIES Plaintiff's motions. Although Konstantinidis's and the court's designations differ from Plaintiff's numerical designations, a reader can match each item of Plaintiff's original FOIA request to the corresponding item described in Defendant's supporting declarations and Statements of Undisputed Material Facts. Plaintiff's chart proves this point. *See* Pl. Opp. ¶ 6. Furthermore, Plaintiff is mistaken if he construes the October 22, 2020, ruling as an order directing the IRS to release particular information. Rather, the court concluded that Defendant had not met its burden on summary judgment, and by denying summary judgment in part without prejudice, the court gave Defendant a second opportunity to justify its responses to the unresolved items of the February, May and August Requests.

**B. Defendant's Renewed Motion for Summary Judgment**

**1. Legal Standard**

Summary judgment is proper where the record shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "An issue is 'genuine' if 'the

evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Holcomb*, 433 F.3d at 895.  Courts must view "the evidence in the light most favorable to the non-movant[ ] and draw[ ] all reasonable inferences accordingly," and determine whether a "reasonable jury could reach a verdict" in the non-movant's favor.  *Lopez v. Council on Am.–Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

FOIA cases are typically decided on motions for summary judgment.  *See Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).  Summary judgment for the agency is only appropriate when an agency proves that it has fully discharged its FOIA obligations.  *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996).

### 2. October 22, 2020, Memorandum Opinion and Order

The court concluded that items (ii) and (iii) of the February Request, items (i) through (ix) of the May Request, and items (b), (c), (g) and (h) of the August Request reasonably can be construed as asking not only for penalty-related information, but also for the income tax returns giving rise to the penalty assessments.  It was not clear from Defendant's prior submissions that release in full of the penalty files included release of the underlying income tax returns.  Nor was it clear that Forms 8278 and 12775, requested in item (iv) of the February Request and item (f) of the August Request, would have been released with the penalty files.  For these reasons, the court denied Defendant's summary judgment motion in part without prejudice.

### 3. Defendant's Searches for Responsive Records

An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents."  *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted).  "[T]he adequacy of a FOIA search is generally determined

not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). The court may rely on an agency's "reasonably detailed [declarations], setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)) (internal quotation marks omitted). "Once an agency has provided adequate [declarations or] affidavits, the burden shifts back to the plaintiff to demonstrate a lack of a good faith search." *Sanders v. Obama*, 729 F. Supp. 2d 148, 155 (D.D.C. 2010) (citing *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993)), *aff'd sub nom. Sanders v. U.S. Dep't of Justice*, No. 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011).

### a. Integrated Data Retrieval System ("IDRS")

An IDRS search "is the standard procedure for locating taxpayer files, to include the type of penalty files that the Plaintiff sought." Def. SMF ¶ 5. IDRS is described as "an electronic system . . . of databases and operating programs that support [IRS] employees working active tax cases within each business function across the entire organization." *Id.* It "manages data that has been retrieved from the Master File." *Id.* ¶ 6. The Master File System is the IRS's "nation-wide electronic information system containing taxpayer account information." *Id.* ¶ 7. The "Non-Master File System . . . store[s] temporary taxpayer information," and "[w]hen such taxpayer information is complete, the account information is then transferred to the Master File System." *Id.* IDRS "manages data that has been retrieved from the Master File, allowing [IRS] employees to take specific actions on taxpayer account issues, track status and post transaction updates back to the Master File." *Id.* ¶ 6. An IDRS search using a taxpayer's Social Security number and

Command Codes would yield "Document Locator Numbers," described as "individual record numbers used by the [IRS] to track, archive, and retrieve records." *Id.* ¶ 8.

### b. Search for Records Responsive to the February Request

On March 8, 2018, Konstantinidis searched IDRS using as search terms Plaintiff's Social Security number and the following Command Codes:

> INOLES, IMFOLI (to retrieve an index of all the tax modules of the input Social Security Numbers)
>
> SUMRY, AMDIS (to retrieve a summary of all tax years and audits)
>
> AMDISA (to determine the examination status of Plaintiffs' tax years)
>
> IMFOLS and IMFOLT (to retrieve all amounts, dates, and posted transactions pertaining to relevant tax years)

*See id.* ¶ 8. The search yielded the status and location of the case file and Document Locator Numbers associated with responsive records. *Id.*

On review of these records, retrieved from the Fort Worth Federal Records Center and the Austin Service Center, *id.* ¶ 9, Konstantinidis located information responsive to items (ii), (v) and (vi), but did not find Forms 12775, which would have been responsive to item (vi), *see id.* ¶ 12. On April 14, 2017, the IRS released in full 275 pages of records "which represented the entire penalty assessment file that existed for [tax years] 2011, 2011, and 2012." *Id.* ¶ 16.

### c. Search for Records Responsive to the May Request

After reviewing the May Request, Konstantinidis concluded that items (i) through (ix) and (xi) were duplicative of the February Request insofar as both "requested records pertaining to penalty assessments . . . for tax periods 2010, 2011 and 2012." *Id.* ¶ 20. Consequently, Konstantinidis did not conduct a search for records responsive these items of the May Request. *See id.*

### d. Search for Records Responsive to the August Request

The IDRS search conducted on September 12, 2018, *see id.* ¶ 40, also used Plaintiff's Social Security number and Command Codes INOLES, IMFOLI, SUMRY, AMDISA, IMFOLS and IMFOLT as search terms, *id.* ¶ 41. It yielded the status and location of the case file, and 27 pages of records pertaining to Plaintiff's 2015 income tax return and penalties assessed for that tax period. *See id.* These records were retrieved from storage at the Dayton, Ohio Service Center, *id.* ¶ 42, and were released in full on November 13, 2018, *id.* ¶ 43.

### 4. Defendant's December 22, 2020, Release of Records

On December 22, 2020, the IRS "release[d] in full 131 pages of records of Plaintiff's tax returns and tax information for tax years 2010, 2011, 2012, and 2015," Def. SMF ¶ 50, including:

> a. Form 1040X filed on behalf of Byron Taylor for the 2010 tax year (2 pages);
>
> b. Additional return information related to the Form 1040X filed on behalf of Byron Taylor for the 2010 tax year (52 pages);
>
> c. Form 1040X filed on behalf of Byron Taylor for the 2011 tax year (2 pages);
>
> d. Additional return information related to the Form 1040X filed on behalf of Byron Taylor for the 2011 tax year (23 pages);
>
> e. Form 1040X filed on behalf of Byron Taylor for the 2012 tax year (2 pages);
>
> f. Additional return information related to the Form 1040X filed on behalf of Byron Taylor for the 2012 tax year (21 pages);
>
> g. Form 1040 filed on behalf of Byron Taylor for the 2015 tax year (2 pages); and
>
> h. Additional return information related to the Form 1040 filed on behalf of Byron Taylor for the 2015 tax year (27 pages).

Decl. of Disclosure Specialist Satenik Konstantinidis (ECF No. 36-3, "Konstantinidis III Decl.")

¶ 4. Konstantinidis explained that the income tax return information for tax years 2010, 2011, 2012 and 2015 included the relevant Forms 8278 (Assessment and Abatement of Miscellaneous

Civil Penalties). *See id.* ¶¶ 5-8. No Forms 12775 (ADJ54 Adjustment Format) were located. *See id.* ¶¶ 18-19.[2]

### 5. Plaintiff's Challenges to the IRS's Searches for Responsive Records

Plaintiff challenges both the method and the results of Defendant's searches. First, he contends that multiple searches of the IRS's electronic files were not reasonable because Konstantinidis "knew the documents were not located" there. Pl. Opp. ¶ 32. Plaintiff notes that certain correspondence from the IRS on which he based his FOIA requests originated from IRS offices in Kansas City, Missouri, Austin, Texas, and Ogden, Utah. *See, e.g., id.* ¶¶ 31, 34. He faults Konstantinidis for having limited her searches to electronic records rather than contacting the Kansas City, Austin, and Ogden offices directly and asking staff to forward copies of the documents of interest to him. *See id.* ¶¶ 31-32. For example, Plaintiff points to correspondence (LTR3176) generated at the IRS's Ogden office notifying him that "he filed an allegedly frivolous document[.]" *Id.* ¶ 38. He posits that Konstantinidis "could have tried the novel approach of calling" that office and having "them to send her a copy of the 'frivolous' document." *Id.* According to Plaintiff, "[i]t is quite possible the Ogden, Utah office did not enter the form into any of the computer records [the declarant] claims to have searched." *Id.* His "exhibits . . . identified exactly where the document(s) was/were located," and a "common sense approach would be to start a search there rather than wasting all this time unnecessarily searching through a myriad of computer records." *Id.*; *see id*. ¶¶ 44-45.

---

[2] Konstantinidis explains that the IRS would generate Forms 12775 if adjustments had been made to Plaintiff's account. Konstantinidis III Decl. ¶ 19. She opines that, because no adjustments were made, "it is unlikely such forms exists." *Id*. Nevertheless, because there is a possibility that Forms 12775 exist and would be stored at the Federal Records Center in Fort Worth, Texas, she requested these records. *Id.* The facility remains closed due to the COVID-19 pandemic, however. *Id*.

Plaintiff further notes that his ability to produce copies of IRS correspondence proves that responsive records exist. For example, he argues that by issuing correspondence (LTR3176 and CP15) to notify Plaintiff that he submitted a document deemed frivolous for which the IRS imposed a $5,000 penalty, the IRS must have a copy of that document, *see id.* ¶ 35, and its refusal to release that document violates the FOIA. Similarly, if the IRS generated a Form 8278 for tax year 2015, indicating that Plaintiff had filed a frivolous income tax return, the IRS should have produced the actual document it deemed frivolous. *See id.* ¶ 37.

Not only does Plaintiff object to the actual documents released, but he also objects to their presentation. For example, with respect to the December 22, 2020, release, Plaintiff contends that the IRS merely produced "more copies of the same documents Defendant provided previously," none of which is "responsive to the FOIA requests at issue or the order given by this Court[.]" Pl. Opp. ¶ 5; *see id.* ¶¶ 6, 8, 11-26. He asserts that he did not request income tax returns for tax years 2010, 2011, 2012 and 2015, *see id.* ¶¶ 10-25, and considers their release "an attempt to mislead and commit fraud on the Court," as if production of "a useless stack of irrelevant documents" complies with the court's Order, *id.* ¶ 9. And with respect to the request for Forms 8278, Plaintiff states that the IRS "provided . . . less than half of the Forms 8278 requested[.]" *Id.* ¶ 26. Where the IRS did produce documents, Plaintiff faults Konstantinidis for having "made no attempt to match any of the documents she provided with the requests made by Plaintiff[.]" *Id.* ¶ 27. He opines that Konstantinidis "is unable to match the documents she provided to any part of Plaintiff's requests because the documents she provided are not relevant to Plaintiff's request and this Court's order." *Id.* None of Plaintiff's arguments is persuasive.

The IRS need only conduct a search reasonably calculated to uncover all relevant documents. Insofar as Plaintiff demands information pertaining to penalties assessed for income

tax documents deemed frivolous by the IRS, Defendant adequately explains that penalty-related information would be maintained in penalty assessment files and that a search for such files is conducted in IDRS using a taxpayer's Social Security number and the Command Codes Konstantinidis identified. Konstantinidis did so, retrieved the records, and the IRS released these penalty files in full – as they exist – for tax years 2010, 2011, 2012 and 2015.

"[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (citing *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982)). To this end, the IRS submitted declarations to explain the method and scope of its search, *see Perry*, 684 F.2d at 126, which adequately "describe . . . what records were searched, by whom, and through what processes," *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994). The IRS is obligated to release the records it has, however incomplete in Plaintiff's view, and it need not organize, collate or annotate responsive records in a particular manner. *See Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980) (noting that FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained"); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 162 (1975) (holding that, "insofar as the order of the court below requires the agency to create explanatory material, it is baseless"); *Brown v. DOJ*, 734 F. Supp. 2d 99, 104 (D.D.C. 2010) (declining to extend agency's obligation to make records available in readily reproducible format to include Bates stamping records that were not already numbered). And an agency's search does not run afoul of the FOIA if it fails to locate every document of interest to a requester. *See Vest v. Dep't of the Air Force*, 793 F. Supp. 2d 103, 120 (D.D.C. 2011) (finding that "the FOIA does not mandate a 'perfect' search, only an 'adequate'

one"); *Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) ("Perfection is not the standard by which the reasonableness of a FOIA search is measured.").

Defendant released Plaintiff's income tax returns in response to the court's interpretation of Plaintiff's objection to Defendant's prior motion for summary judgment. If Plaintiff sought records deemed frivolous by the IRS, and those frivolous records could include actual income tax returns, then Plaintiff's requests would encompass not only penalty files but also the income tax returns themselves. Even though Plaintiff denies having requested income tax returns specifically, he has no cause to complain that the IRS released the returns pursuant to the court's October 22, 2020, Memorandum Opinion and Order.

## III. CONCLUSION

The court concludes that the IRS conducted reasonable searches for records responsive to Plaintiff's FOIA requests and released those records in full. Therefore, the court GRANTS summary judgment for Defendant and DENIES Plaintiff's motions for clarification. An Order is issued separately.

DATE: September 10, 2021

/s/
TANYA S. CHUTKAN
United States District Judge